IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ANTHONY HERBERT MORRIS,**

    **Plaintiff,**

**v.**                                                   **CIVIL ACTION NO. 5:05CV193**
                                                                                (Judge Stamp)

**AL HAYNES, Warden,**
**D. Hall, Correctional Counselor,**
**VANDHNA PURI SHARMA, Health Service Administrator,**
**S. FOLK, Health Service Administrator,**
**D. MURPHY, Lieutenant,**
**M.H. ROCHA, Senior Specialist,**
**UNITED STATES OF AMERICA,**

    **Defendants,**

## REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this case on November 25, 2005, by filing a civil rights complaint in which he alleges that due to the negligence of several of the defendants, he was assaulted by another inmate on June 15, 2005. In addition, the plaintiff alleges that after the assault, several of the defendants violated his constitutional rights by retaliating against him for filing grievances, using excessive force, unjustly punishing him and being deliberately indifferent to his serious medical needs. As relief, the plaintiff seeks $10,000.000 in compensatory and punitive damages. On February 14, 2006, the plaintiff was granted permission to proceed as a pauper. Following a Report and Recommendation that was filed on July 10, 2006, the Court entered an Order directing that the plaintiff's claims under the Federal Tort Claim Act ("FTCA") regarding his assault by another inmate proceed against defendants Haynes, Hall, Betler, and Rocha. In addition, the Court ordered that

defendant Murphy be ordered to respond to the plaintiff's excessive force allegations. Finally, the Court ordered defendants Puri Sharma, Folk and Haynes to respond to the plaintiff's claims of deliberate indifference. However, the Court dismissed the plaintiff's claims regarding retaliation and unjust punishment.[1] On December 10, 2007, the defendants filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. On December 11, 2007, a Roseboro Notice was issued. As of the date of this Report and Recommendation, the plaintiff has not filed a response despite being granted an enlargement of time in which to do so.

Accordingly, this case is before the undersigned for a report and recommendation on the defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment.

## II. The Complaint

With respect to the allegations that survived the initial screening process, the plaintiff first alleges that he was assaulted by another inmate on June 5, 2005, while incarcerated at USP Hazelton. The plaintiff maintains that staff had been warned that his life had been threatened prior to the assault, but did nothing to protect him. As a result of the attack, the plaintiff claims that he suffered several serious injuries, including a broken nose, a damaged left eye socket, and a fractured mandible. In addition, the plaintiff maintains that staff ignored a protective order which directs that he be separated from other inmates. As a result, the plaintiff alleges that he was assaulted for a second time. Next, the plaintiff alleges that on December 19, 2005, defendant Morris choked him, threw him onto the cell floor, and forced him to swallow water from the cell floor. The plaintiff further alleges that he could not breathe

---

[1]In addition, the Order directed that the following defendants be terminated from the case: C. Pulice, Unit Manager; R. Hensley, Correctional Officer; Debbie Lohr, Disciplinary Officer; P. Maldonaldo, Case Manager; Raudebaugh, Special Investigative Agent; and the Mid-Atlantic Regional Office Custody and Classification Administrator.

when the defendant was squeezing his throat and that he nearly drowned when he was forced to swallow the water from the cell floor. The plaintiff also alleges that at the time of the attack, he was in hand restraints and was not acting in a hostile or aggressive manner. With respect to his final claim of deliberate indifference, the plaintiff alleges that he had surgery to repair his fractured mandible. As a result of the surgery, the plaintiff had wires and bands in his mouth that were supposed to be removed within a certain time period prescribed by the doctor and/or hospital that performed the surgery. The plaintiff alleges that the wires and bands were not removed until several months after the prescribed time. The plaintiff further alleges that he sought removal of the bands by defendants Puri, Folk, and Haynes, but that his requests were not taken seriously although they knew the delayed removal of the wires and bands were causing him serious pain. Finally, the plaintiff alleges that because the wires and bands were not timely removed, he suffered daily pain and developed cavities that cause him pain while eating.

### III. **Defendants' Motion to Dismiss or in the Alternative for Summary Judgment**

In support of their Motion, the defendants allege that the plaintiff has failed to exhaust his mandated administrative remedies on the Bivens issues that survived initial screening, including his claims concerning the two assaults by another inmate, the assault by staff, and the alleged deliberate indifference to his medical needs. In addition, the defendants allege that the plaintiff has failed to satisfy the FTCA's administrative exhaustion requirement pursuant to 28 U.S.C. § 2675(a). In addition to their claims that the plaintiff's complaint should be dismissed for failure to exhaust his mandated administrative remedies, the defendants allege that defendants Haynes, Folk and Puri should be dismissed because the plaintiff has neither asserted nor established personal involvement on their part in any constitutional violation. With respect the plaintiff's Eighth Amendment claim, the defendants

3

allege that the facts and allegations do not support a finding of deliberate indifference to his serious medical needs, nor to their obligation to protect him from other inmates. Finally, the defendants allege that no excessive force was used against the plaintiff in the December 19, 2005, incident. Accordingly, they request that the plaintiff's claims be dismissed.

**IV. Standard of Review**

**A. Motion to Dismiss**

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. Walker v. True, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 4506 (1957).

**B. Summary Judgment**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine

4

issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

## V. ANALYSIS

### A. BIVENS CLAIMS

A Bivens action like an action under 42 U.S.C. §1983, is subject to exhaustion of

administrative remedies as required by the Prison Litigation Reform Act (PLRA). Porter v. Nussle, 534 U.S. 516, 524 (2002). Under the PLRA, a prisoner bringing an action "with respect to prison conditions" under 42 U.S.C. §1983 must first exhaust all available administrative remedies. 42 U.S.C. §1997e. Exhaustion as provided in §1997e(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). While the phrase "with respect to prison conditions" is not defined in 42 U.S.C. §1997e, the Supreme Court has determined that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516 (2002).[2] Moreover, exhaustion is even required when the relief the prisoner seeks, such as monetary damages, is not available. Booth, 532 U.S. at 741.

The United States Supreme Court has held that proper exhaustion of administrative remedies is necessary, thus precluding inmates from filing untimely or otherwise procedurally defective administrative grievances or appeals and then pursuing a lawsuit alleging the same conduct raised in the grievance. See Woodford v. Ngo, 126 S.Ct. 2378 (2006). In Woodford, the United States Supreme Court clarified that the PLRA exhaustion requirement requires proper exhaustion. Id. at 2382. The Court noted that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without

---

[2] In Porter, an inmate sued the correctional officers who had severely beaten him. The inmate alleged that the correctional officers "placed him against a wall and struck him with their hands, kneed him in the back, [and] pulled his hair." Porter, 534 U.S. at 520. A unanimous court noted that although dismissal of a claim not yet administratively exhausted was once within the discretion of the district court, courts no longer enjoyed that discretion in view of the PLRA, and are required to dismiss the action. In so holding, the Court stated that "[o]nce within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. Id. at 524 (citing Booth v. Churner, 532 U.S. at 740).

imposing some orderly structure on the course of its proceedings." Id. at 2386. The Court found that requiring proper exhaustion fits with the scheme of the PLRA, which serves three main goals: (1) eliminating unwarranted federal court interference with the administration of prisons; (2) "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Id. at 2388. As the Court concluded, "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." Id.

The actions of the defendants regarding improper medical care, staff assault, and failure to protect constitute actions "with respect to prison conditions" within the meaning of the PLRA, and the requirement of exhaustion of administrative remedies applies to those actions and the alleged effects of those actions.

The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9),within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the Warden's response, he may appeal to the regional director of the Federal Bureau of Prisons (BP-10) within 20 calendar days of the Warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the office of the General Counsel (BP-11) within 30 calendar days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997).

With regard to the claims at issue in this case, the plaintiff filed Remedy ID No. 388842-F1 and 388844-F1 on September 15, 2005, complaining about inadequate medical care concerning the wires in his mouth. Both were closed in the institutional level on September 23, 2005. He did not appeal either to the Regional Office or the Central Office level. (Doc. 5-3, pp. 2, 13). On January 11, 2006, the plaintiff filed Remedy ID No. 400448-F1 at the institution complaining that he was attacked by staff and that his cell in the SHU was flooded. The remedy was closed at the institutional level on January 17, 2006. Thereafter, the plaintiff appealed to the Regional Offices where it was denied on February 17, 2006. His appeal to the Central Office on June 15, 2006 was rejected as untimely. He resubmitted the appeal on July 11, 2006, and it was again rejected as untimely on July 19, 2006. (Doc. 50-3, pp. 13-14). The plaintiff filed no other remedies relating to any of his other pending claims.

Accordingly, the plaintiff clearly failed to properly exhaust his administrative remedies with regard to the allegations raised in his complaint. The plaintiff's failure to do so bars the claims and dismissal is appropriate. See Woodford v. Ngo, 548 U.S. 81, 90 (2006); Booth v. Churner, 532 U.S. 731, 741 (2001)(Where inmate exhausted his grievance at the first level but failed to complete all three levels of the Pennsylvania grievance process, dismissal for failure to exhaust was appropriate).

**B. FEDERAL TORT CLAIM ACT**

The Federal Tort Claims Act (FTCA) is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow civil suits for actions arising out of negligent acts of agents of the United States. The United States cannot be sued in a tort action unless it is clear that Congress has waived the government's sovereign immunity and authorized suit under the FTCA.

8

Dalehite v. United States, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. § 1346(b), § 1402(b), § 2401(b), and §§ 2671-2680.

There is no dispute that federal inmates may sue under the FTCA "to recover from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150 (1963). The FTCA's waiver is subject to the condition that an administrative claim must first be submitted to the appropriate agency and denied before suit can be filed. See 28 U.S.C. § 2675(a). See also Bellomy v. United States, 888 F. Supp. 760 (S.D.W.Va. 1995). Filing a timely administrative claim is jurisdictional and cannot be waived. Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994) (*citing* Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986), Muth v. United States, 1 F.3d 246 (4th Cir. 1993)). Thus, before an inmate can bring a claim under the FTCA, the inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.11 and 543.30 to 543.32. The administrative process which inmates must exhaust when they have complaints under the FTCA is spelled out at 28 C.F.R. §§ 14.1 - 14.11. To exhaust administrative remedies as a required before filing an action under the FTCA, the inmate must first submit an administrative claim including a claim for monetary damages in a sum certain for the alleged injury sustained on a Standard Form 95 to the Federal agency whose activities gave rise to the claim. Id., § 14.2(a) and (b)(1). After investigation and examination and informal attempts at resolving the inmate's claim as the circumstances may require Id., §§ 14.6 and 14.8, the agency may deny or approve the inmate's claim. If the agency denies the inmate's claim, he may file suit in the District Court within six months of the mailing of the denial. Id., § 14.9(a).

In this case, the plaintiff filed his administrative tort claim on August 25, 2005, seeking $500,000 for personal injuries he sustained in the attack on June 15, 2005. (Doc. 50-3, p. 5). The

plaintiff then filed the complaint in this cases pursuant to the FTCA on November 29, 2005, approximately three months later.

The plain language of 28 U.S.C. § 2675(a) clearly provides that the administrative process must be fully exhausted prior to the commencement of an action in federal court pursuant to the FTCA. See 28 U.S.C. § 2675(a). In McNeil v. United States, 508 U.S. 106, 122 (1980), the Supreme Court held that failure to completely exhaust administrative remedies **prior** to filing an FTCA claim is a jurisdictional defect that cannot be cured by administrative exhaustion **after** suit is filed. In short, a prematurely filed FTCA claim "cannot become timely by the passage of time after the complaint is filed," Id. at 106, and a court has no authority to equitably expand its jurisdiction beyond the limits established by Congress. Ramming v. United States, 281 F.3d 158, 165 (5th Cir. 2001). Therefore, even though denial of an administrative tort claim is statutorily presumed if six month passes without action on a properly filed administrative claim[3], the plaintiff did not wait the six months until he filed the complaint in this action, and for the reasons outlined above, this court does not have jurisdiction to address his complaint.

## VI. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 46) be **GRANTED**; and this case be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust the mandatory administrative remedies required to file either a Bivens or FTCA cause of action.

Any party may file within ten (10) days after being served with a copy of this Recommendation

---

[3] See 28 U.S.C. § 2675(a).

with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: July 2, 2008

    /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE